# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESSAM E. RABBAN,<br><br>                              Plaintiff,<br>  vs.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br><br>                              Defendant. | **CASE NO. 07-CV-2053-H (CAB)**<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT & GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT** |

On October 29, 2007, Plaintiff Wessam Rabban ("Plaintiff") filed a complaint pursuant to section 205(g) of the Social Security Act (the "Act") requesting judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding the denial of Plaintiff's claim for disability insurance and supplemental security income benefits. (Doc. No. 1, Compl.) On July 29, 2008, Plaintiff filed a motion for summary judgment regarding his 205(g) claim. (Doc. No. 13.) On September 8, 2008, Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment. (Doc. Nos. 16, 17.) Plaintiff did not file a reply or opposition to Defendant's cross-motion for summary judgment.

The Court concludes that this matter is appropriate for resolution without oral argument and submits the motion on the papers under local rule 7.1(d)(1). For the following reasons, the Court denies Plaintiff's motion for summary judgment and grants Defendant's cross-

- 1 -                                                                                            07cv2053

motion for summary judgment.

## **Background**

Plaintiff filed an initial application for supplemental security income and disability insurance benefits on September 15, 2005. (Tr. 83–93.) Plaintiff was denied initially and upon reconsideration by the Social Security Administration ("Administration"). (Id. 48, 56.) Plaintiff requested a hearing, and on January 16, 2007, appeared and testified before an administrative law judge ("ALJ"). (Id. 62, 22–43.)

At the time of the hearing, Plaintiff was thirty-four years old and completed three years of education beyond high school. (Id. 25–26.) Plaintiff had past relevant work experience as a liquor store cashier and stock clerk. (Id. 26–27, 40.) Plaintiff claimed he became unable to work on June 18, 2005, due to depression, schizophrenic disorder, and post traumatic stress disorder. (Id. 26.)

In a decision dated March 24, 2007, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (Id. 13.) As part of his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 18, 2005, had severe impairments of depression, post traumatic stress disorder, and schizophrenia, but that Plaintiff's impairments, either singly or in combination, did not meet or equal an impairment listed in Appendix 1 to Subpart P of the Regulation number 4, 20 C.F.R. pt. 404, subpt. P, app. 1. (Id. 15.) The ALJ also found, in light of the entire record, that Plaintiff has the residual functional capacity to perform work activity involving simple, repetitive tasks with no public contact, but is unable to perform any past relevant work experience as a cashier and a liquor store clerk. (Id. 16, 19.) The ALJ found that with Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as small products assembler, Dictionary of Occupational Titles ("DOT") number 706.684-022, and garment folder, DOT number 789.687-066. (Id. 20.) Finally, the ALJ found that Plaintiff has not been under a disability, as defined by the Act, from June 18, 2005 through the date of his decision, March 24, 2007. (Id. 21.) The decision became final when the Appeals Council adopted the ALJ's findings by decision dated August 21, 2007. (Id.

5–7.)

## Discussion

### I. Legal Standards Regarding Review of Denial of Disability Claim

Section 205(g) of the Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. See 42 U.S.C. § 405(g). Section 205(g) provides that a district court has the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for rehearing. See id. The Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." Brawner v. Sec'y of Health and Human Serv., 839 F.2d 432, 433 (9th Cir. 1988). "Evidence can be 'substantial' if it is more than a scintilla, even though less than a preponderance." Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. See id. If the evidence can support an outcome for either the Commissioner or the claimant, a reviewing court may not substitute its judgment for that of the ALJ. See id. Even if the reviewing court finds that substantial evidence supports the Commissioner's decision, however, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his decision. See Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978).

Under the Act, in order to qualify for disability benefits, an applicant must demonstrate that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. See Tackett v. Apfel, 180 F.3d 1094,1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Act. See id. (citing 20 C.F.R. §

404.1520). The Ninth Circuit has summarized this process:

> The burden of proof is on the claimant as to steps one to four. As to step five, the burden shifts to the Commissioner. If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider subsequent steps. The five steps are:
>
> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. See 20 C.F.R.

§ 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. See id.

Tackett, 180 F.3d at 1098–99.

An ALJ has "a duty to fully and fairly develop the record to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 1998). Ambiguous evidence or an inadequate record to allow for the proper evaluation of the evidence triggers the ALJ's duty to "conduct a proper inquiry." See id. (quoting Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). Such proper inquiry may be conducted in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. Id.; Smolen, 80 F.3d at 1288; Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998). The decision whether to reverse and remand for further administrative proceedings, or to reverse and award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). Remand is appropriate "where additional administrative proceedings could remedy defects." Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). When the evidence is inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

The question is whether the ALJ's decision is supported by substantial evidence and

free of legal error. Specifically, Plaintiff argues the ALJ erred by: (1) improperly rejecting medical opinions supportive of greater limitations; and (2) rejecting Plaintiff's testimony. (Doc. No. 13 at 8–9.) Defendant argues the ALJ correctly considered the medical and testimonial evidence to determine Plaintiff's residual functional capacity. (Doc. No. 17 at 3–6.)

**A. Opinion Evidence**

In making a residual functional capacity determination, the ALJ must consider the opinions of acceptable medical sources about the nature and severity of the Plaintiff's impairments and limitations. 20 C.F.R. §§ 404.1527, 416.927; S.S.R. 96-2p; S.S.R. 96-6p. A treating or examining physician's opinion is given more weight than that of a non-examining physician. Benecke v. Barnhart, 379 F.3d 587, 592 (9th Cir.2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. See Flaten v. Secretary of Health and Human Serv., 44 F.3d 1453, 1463 (9th Cir.1995) (citing Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir.1989); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir.1989). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding the treating physician's opinion. See Flaten, 44 F.3d at 1463–64; Fair, 885 F.2d at 604.

The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir.1995). The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. Lester, 81 F.3d at 831, citing Pitzer v. Sullivan, 908 F.2d 502, 506 n. 4 (9th Cir.1990). Cases have upheld the rejection of an examining or treating physician based on part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject

the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. Lester, 81 F.3d at 831 (citing Magallanes, 881 F.2d at 751–55) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); Roberts v. Shalala, 66 F.3d 179 (9th Cir.1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician, but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. Andrews, 53 F.3d at 1039.

Plaintiff argues the ALJ improperly rejected the opinions of Dr. Mustonen, Plaintiff's treating psychiatrist, and Drs. Smith and Glassman, examining doctors. (Doc. No. 13 at 8–9.) On December 6, 2005, Dr. Mustonen completed a form for state disability, certifying that in his opinion Plaintiff continued to be disabled as a result of his paranoid schizophrenia and depression. (Tr. 282.) Dr. Mustonen stated that Plaintiff's inability to concentrate, hallucinations, low energy, and poor motivation prevents him from returning to regular and customary work. (Id.) Dr. Mustonen estimated that Plaintiff would be able to perform his regular or customary work by February 1, 2006. (Id.) Dr. Smith interviewed Plaintiff on June 11, 2005,[1] in connection with an investigation into submitting false documents with a passport application and concluded that Plaintiff has a significant psychotic illness originating either from severe depression or schizophrenia, aggravated by debilitating post traumatic stress disorder. (Id. 235–39.) Dr. Smith also concluded that Plaintiff has shown good response to the treatment initiated thus far. (Id. at 239.) Dr. Glassman interviewed Plaintiff on January 6, 2006,[2] and concluded that Plaintiff's presentation was most consistent with schizophrenia with features of post traumatic stress disorder and possible depression. (Id. 287–91.) Dr.

---

[1] The ALJ's decision states that Dr. Smith interviewed Plaintiff on August 4, 2005. (Tr. 17.) However, Dr. Smith interviewed Plaintiff on June 11, 2005 and prepared his report on August 4, 2005. (Id. 235–36.)

[2] The ALJ's decision states that Dr. Glassman interviewed Plaintiff on January 12, 2006. (Tr. 17.) However, Dr. Glassman interviewed Plaintiff on January 6, 2006 and prepared his report on January 12, 2006. (Id. 287.)

1  Glassman concluded that Plaintiff appeared "to be inappropriate for a workplace setting" and
2  appeared "to be unlikely to be able to maintain appropriate relationships with others, or to
3  maintain concentration or persistence, or maintain goal-directed behavior for a workplace
4  setting". (Id. 290–92.) Dr. Glassman noted in a subsequent report that it was certainly
5  possible that he was fooled during the January 6 interview and that Plaintiff was exaggerating,
6  particularly since Plaintiff did not give important information revealed later to Dr. Glassman.
7  (Id. 296.)

8        The ALJ did consider the treating and examining doctors opinions and gave reasons for
9  rejecting them and relying instead on Dr. Bolter's testimony, an non-treating, non-examining
10 physician. (Id. 16–19.) In his decision, the ALJ went through the treating and examining
11 doctors' reports one by one, laying out their respective findings. (Id. 17–18.) He then
12 considered the testimony of Dr. Bolter, a non-treating, non-examining medical expert who
13 reviewed the medical records and testimony of the Plaintiff. (Id. 18–19.) After considering
14 the evidence of record, the ALJ rejected the treating and examining doctors' opinion evidence
15 because the mental status examinations of record were unsupported by objective findings, such
16 as clinic signs and laboratory findings, and based entirely on the Plaintiff's own reported
17 subjective complaints. (Id. 19); see Flaten, 44 F.3d at 1463–64; Fair, 885 F.2d at 604. The
18 ALJ found that Dr. Bolter, "accurately and perspicaciously reiterates that specific mental
19 examinations are deficient in objectifying and stating the bases for the opinions cited in the
20 evidence of record." (Id. 19.) He went on the explain that Dr. Bolter "analogizes [the mental
21 examination] appropriately to a medical source statement without tests, laboratory data, and
22 analysis to support the findings cited therein." (Id. 19.) The ALJ also noted Dr. Glassman's
23 statements that Plaintiff was possibly exaggerating in the clinical interview. (Id. 19.) The ALJ
24 found that Dr. Bolter's determination that Plaintiff retained a mental residual functional
25 capacity for simple repetitive tasks and limited public contact was consistent with the objective
26 evidence of the record. (Id. 19.)

27       The Court concludes after review of the record that the ALJ did not commit legal error
28 by rejecting the opinion evidence of Plaintiff's treating and examining doctors and that the

ALJ's decision is supported by substantial evidence.  The ALJ stated specific and legitimate reasons for rejecting the opinion evidence that is supported by substantial evidence in the record.  He rejected the opinion evidence not just on the basis of Dr. Bolter's testimony, but because in reviewing the treating and examining doctors' reports, they lack objective bases for the given diagnoses and instead rely on Plaintiff's subjective complaints. As Dr. Bolter testified, "the mental status examination in a psychiatric case is equivalent to a physical examination in a non-psychiatric case.  What a patient tells us is subjective; what we observe is objective."  (Tr. 32.)  Dr. Bolter testified that the treating and examining doctors failed to perform the routine questions usually associated with a mental status examination.  (Id. 31.) Dr. Bolten further testified that Dr. Glassman's and Dr. Smith's examinations, as well as Kaiser treatment records, did not document any hallucinations, paranoia, evidence of response to external stimuli, or an impairment in orientation, and that examination findings actually elicited were inconsistent with paranoia. (Id. 33, 35.)  The ALJ concluded based on the record that the treating and examining doctors failed to do objective mental status examinations to back up their diagnoses based on Plaintiff's subjective statements.   It is proper for an ALJ to reject psychological assessments and diagnoses because they are based on the Plaintiff's subjective statements and complaints, and not on objective data.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

**B. Credibility**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.  In making a residual functional capacity determination, the ALJ is required to take into account all of the Plaintiff's symptoms, including pain, to the extent they are reasonably consistent with the medical and other evidence in the record. 20 C.F.R. §§ 404.1529, 416.929;

1  S.S.R. 96-8p.

2  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.1991). In the absence of objective medical evidence on the effect of symptoms, an ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. Id. at 345–46. "Generally, 'questions of credibility and resolution of conflicts in the testimony are functions solely' for the agency." Parra v. Astrue, 481 F.3d 742, 749 (9th Cir. 2007) (quoting Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.1982) (internal quotation marks omitted)). If the ALJ finds the claimant's testimony about the severity of the claimant's pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir.2002). The ALJ's reasons must be supported by "clear and convincing" evidence. Lingenfelter v. Astrue, 504 F.3d 1028, 1038–39 (9th Cir.2007); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.2001); Morgan, 169 F.3d at 599. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. Fair, 885 F.2d at 601. The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. Thomas, 278 F.3d at 958.

Plaintiff argues that the ALJ rejected his subjective complaints without making specific findings stating clear and convincing reasons for doing so. (Doc. No. 13 at 9.) Contrary to Plaintiff's contentions, the ALJ did not find that Plaintiff lacked credibility, but that statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. 19.) The ALJ did find Plaintiff credible to the extent that his symptoms limited him to simple, repetitive tasks with no public contact. (Id. 16.) The ALJ based this credibility determination on Plaintiff's testimony that medications had improved his condition with no

reported disabling side effects. (Id. 19, 28, 293); see Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ properly noted that records showed that the claimant's mental symptoms improved with the use of medication); see also Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983). The ALJ also based his credibility determination of Plaintiff's statements concerning the limiting effects of his symptoms on statements Plaintiff made in the record that he watches TV, cleans the yard, cleans his room, shops for clothes and groceries, goes to church every day, and goes to the mall. (Tr. 19, 191, 193–95); see Burch, 400 F.3d at 680–81 (claimant's daily activities "suggest that she is quite functional"); Thomas, 278 F.3d at 958–59 (ability to perform various household chores such as cooking, laundry, washing dishes and shopping suggested ability to perform a reduced range of light work); Fair, 885 F.2d at 604 (claimant found not credible where he could perform routine household and shopping chores, and ride public transportation). The ALJ concluded that these activities are not commensurate with the level of disabling limitation alleged by Plaintiff. (Tr. 19.) The ALJ also cited the record's reflection of a history of conservative treatment for Plaintiff's alleged impairments in his credibility determination. (Id.); see Parra, 481 F.3d at 750-51 ("Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted). The record reflects that Plaintiff received medication management and counseling for his symptoms, and there is no evidence of hospitalization for his depression, post traumatic stress disorder, or schizophrenia. (Tr. 232, 241, 247.) Finally in regards to the ALJ's credibility determination, he noted Dr. Glassman's statement that Plaintiff was possibly exaggerating during his examination and evaluation of Plaintiff. (Id. 19); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ discredited claimant's testimony, citing her tendency to exaggerate).

The Court concludes that the ALJ did not commit legal error in his credibility determination and his decision is supported by substantial evidence. The ALJ provided clear and convincing reasons for discounting Plaintiff's credibility, as he pointed to specific evidence in the record undercutting Plaintiff's testimony as to the limiting extent of his symptoms. The ALJ found that Plaintiff's testimony about the severity of his symptoms was

unsupported by objective medical evidence in the record, as discussed in relation to the rejection of treating and examining doctors' testimony, and that other evidence of improvement with medication, reported daily living activities, a conservative treatment regime, and Dr. Glassman's statement about exaggeration undercut Plaintiff's credibility to some extent. The ALJ did not fail to articulate reasons for discounting Plaintiff's subjective pain testimony.

### Conclusion

The Court DENIES Plaintiff Rabban's motion for summary judgment and GRANTS Defendant Astrue's cross-motion for summary judgment. The decision of the ALJ is affirmed.

**IT IS SO ORDERED.**

DATED: February 6, 2009

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.